# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 17-23357-Civ-WILLIAMS/TORRES

MERCINA SOUFFRANT, as personal
representative of the ESTATE OF
HENOLD SOUFFRANT,

      Plaintiff,

v.

TOYOTA MOTOR SALES, U.S.A., INC.,
a foreign corporation, et. al.,

      Defendants.
_____/

## ORDER ON DEFENDANTS' MOTION TO SEAL

This matter is before the Court on Toyota Motor Sales U.S.A., Inc.'s ("TMS") Toyota Motor North America, Inc.'s ("TMNA"), and Toyota Motor Engineering and Manufacturing North America, Inc.'s ("TEMA") (collectively, "Toyota" or "Defendants") motion to seal Exhibit B to Mercina Souffrant's ("Plaintiff") complaint. [D.E. 8]. Specifically, Toyota argues that Exhibit B contains attorney-client privileged communications, confidential proprietary information, and attorney work product. Plaintiff responded on November 6, 2017 [D.E. 10] to which Toyota replied on November 13, 2017. [D.E. 14]. Therefore, Toyota's motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, Toyota's motion is **GRANTED**.

## I. ANALYSIS

The purpose of Toyota's motion is to seal Exhibit B to Plaintiff's complaint on the basis that the documents contain attorney-client privileged communications, confidential proprietary information, and attorney work product. Plaintiff filed this action on September 6, 2017 [D.E. 1] and attached as Exhibit B to her complaint a set of documents and a February 2010 letter from Edolphis Towns, the Chairman of the House of Representatives Committee on Oversight and Government Reform, to Mr. Yoshimi Inaba, the President and CEO of TMNA. Mr. Towns obtained these documents after subpoenaing a former Toyota attorney – Mr. Biller – who had wrongfully obtained the items from Toyota.

Toyota suggests that Mr. Towns' letter must be sealed because it describes in detail several emails and internal communications from Mr. Biller that contain Toyota's attorney-client privileged communications and confidential work product.[1] Toyota also argues that the attached emails at Exhibit B include legal advice that Mr. Biller gave to Toyota as an attorney, his perceived basis for that advice, internal discussions between attorneys in TMS's legal services group, related internal litigation strategies, and disagreements with respect to ongoing cases. As such,

---

[1] Toyota notes that Mr. Towns obtained the relevant documents after subpoenaing Mr. Biller, who had previously stolen the documents from Toyota. Congress then published the documents on the internet, and later removed them after Toyota insisted that the communications were privileged. *See Biller v. Toyota Motor Corp.*, 668 F.3d 655, 670 (9th Cir. 2012) ("The district court concluded that although the letter was first made public on the Internet by Congress, TMS protested and requested that the letter be taken down, a request that Congress granted.").

Toyota requests that the Court direct the clerk to permanently seal all of the documents attached as Exhibit B from the public domain.

Moreover, Toyota argues that it will suffer prejudice if the documents are not sealed because the information in Exhibit B could be used in future lawsuits to target Toyota and would therefore violate public policy in favor of protecting attorney-client communications. Toyota contends that Mr. Biller's statements in the documents at Exhibit B are based on confidential and privilege information that could cause significant harm to Toyota's business and litigation interests. And although Mr. Biller allegedly stole these documents from Toyota and Congress published them (before later taking them down), Toyota contends that it has never waived its privilege. Therefore, Toyota concludes that, although Plaintiff is in possession of the documents at Exhibit B, the protections of the privilege should still apply notwithstanding Mr. Biller's unauthorized actions.

As further support, Toyota relies on the Ninth Circuit's decision in *Biller*, where the court affirmed an arbitrator's decision and concluded that the same documents attached as Exhibit B represent Toyota's confidential proprietary information:

> [T]he district court determined that the four attachments contained Biller's own work product from his time as TMS's counsel, and that the letter referred to the attached materials. The district court concluded that although the letter was first made public on the Internet by Congress, TMS protested and requested that the letter be taken down, a request that Congress granted. In these circumstances, we conclude that TMS preserved its right to maintain the confidentiality of the letter under the Severance Agreement. Accordingly, the district court

3

correctly concluded that these documents were Confidential Information within the scope of the Permanent Injunction.

*Biller*, 668 F.3d at 670. As such, Toyota believes that it has a legitimate privacy interest in preventing any further dissemination of its confidential information and that sealing the documents at Exhibit B will not impair Plaintiff's claims nor impede the interests of justice.

Plaintiff opposes Defendants' motion because Defendants have allegedly failed to meet their burden in sealing the contents of Exhibit B from the public domain. Plaintiff argues that sealing the contents of Exhibit B will have a deleterious effect on consumers and motorists because it may result in countless wrongful deaths and catastrophic life-altering injuries being caused by Toyota's wrongdoing.[2]

Plaintiff further contends that Toyota has failed to demonstrate with any factual specificity that it will be prejudiced by the contents of Exhibit B and that Toyota's conclusory assertions with respect to the documents at issue are not enough to overcome the strong presumption in favor of the public's access to judicial proceedings. *See In re: Photochromic Lens Antitrust Litig.*, 2011 WL 13141945, at *1 (M.D. Fla. June 9, 2011) ("[A] bald assertion that disclosure could harm a business's competitive position is insufficient.") (citing *Baxter Int'l Inc. v. Abbott Labs.*, 297 F.3d 544, 547 (7th Cir. 2002)); *In re Parmalat Secs. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009) ("The party opposing disclosure must make a particular and specific

---

[2] The documents allegedly reveal that Toyota concealed evidence from hundreds of plaintiffs killed or injured by Toyota products.

4

demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection.").[3]

Plaintiff also takes issue with Toyota's reliance on the documents being facially stamped as confidential as being sufficient in demonstrating that the documents are privileged. And Plaintiff points out that the Ninth Circuit's decision in *Biller* was simply a case where the court refused to disturb the findings of an arbitrator – under "a very lax standard" that found the same documents at issue here as privileged. Because Toyota has failed to specify the harm that would be suffered if Exhibit B remained accessible to the public, Plaintiff suspects that Toyota merely wants to mitigate litigation damage stemming from wrongdoing associated with automobile safety and irresponsible litigation practices. Accordingly, Plaintiff argues that the public has an instrumental right to access the contents of Exhibit B to Plaintiff's complaint and that the balance of relevant factors weighs in favor of denying Defendants' motion.

"The operations of the courts and the judicial conduct of judges are matters of utmost public concern," *Landmark Commc'ns, Inc. v. Virginia,* 435 U.S. 829, 839 (1978), and "[t]he common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process." *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311

---

[3] Public discourse on the documents is purportedly even more vital in this case because the information is relevant to the well-being and safety of consumers and motorists.

5

(11th Cir. 2001). This right "includes the right to inspect and copy public records and documents." *Id.* (citation omitted). However, this right of access is not absolute because it ordinarily "does not apply to discovery and, where it does apply, may be overcome by a showing of good cause." *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007).

A finding of good cause requires "balanc[ing] the asserted right of access against the other party's interest in keeping the information confidential." *Chicago Tribune,* 263 F.3d at 1309. "[W]hether good cause exists . . . is . . . decided by the nature and character of the information in question." *Id.* at 1315. "In balancing the public interest in accessing court documents against a party's interest in keeping the information confidential, courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents." *Romero*, 480 F.3d at 1246.

"The attorney-client privilege applies to confidential communications made in the rendition of legal services to the client." *Southern Bell Tel. & Tel. Co. v. Deason*, 632 So. 2d 1377, 1380 (Fla. 1994) (citing Fla. Stat. § 90.502). The burden of establishing the privilege is on the proponent of the privilege, who must establish the existence of the privilege by a preponderance of the evidence. *See Daubert v. Merrell*

*Dow Pharms.,* 509 U.S. 579 (1993) (matters of preliminary questions, identified in FED. R. EVID. 104(a), are to be established by a "preponderance of proof," *citing Bourjaily v. United States,* 483 U.S. 171, 175–76, (1987)). While not absolute, the privilege has long been understood to encourage clients to completely disclose information to their attorneys to allow for the rendition of competent legal advice and "thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981). "Because application of the attorney-client privilege obstructs the truth-seeking process, it must be narrowly construed." *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.,* 295 F.R.D. 550, 583 (S.D. Fla. 2013) (footnote omitted).

As for the attorney-client privilege in connection with corporate entities, the Florida Supreme Court has subjected claims of privilege to a heightened level of security "to minimize the threat of corporations cloaking information with the attorney-client in order to avoid discovery . . . ."[4] *Deason,* 632 So. 2d at 1383; *see also In re Denture Cream Prod. Liab. Litig.,* 2012 WL 5057844, at *5 (S.D. Fla. Oct. 18, 2012) ("The Florida Supreme Court has held that, unlike a claim of attorney-client privilege made by an individual, a claim of privilege raised by a corporation is subject to a 'heightened level of scrutiny.'") (quoting *Deason,* 632 So. 2d at 1383)); *First Chicago International v. United Exchange Co. Ltd.,* 125 F.R.D. 55, 57 (S.D.N.Y. 1989)

---

[4] In a federal diversity action, Florida law governs application of the attorney-client privilege. *See Bradt v. Smith,* 634 F.2d 796, 800 (5th Cir. 1981).

7

("Any standard developed, therefore, must strike a balance between encouraging corporations to seek legal advice and preventing corporate attorneys from being used as shields to thwart discovery."). Therefore, to establish that communications are protected by the attorney-client privilege, Toyota must satisfy the following requirements:

> (1) the communication would not have been made but for the contemplation of legal services;
> (2) the employee making the communication did so at the direction of his or her corporate superior;
> (3) the superior made the request of the employee as part of the corporation's effort to secure legal advice or services;
> (4) the content of the communication relates to the legal services being rendered, and the subject matter of the communication is within the scope of the employee's duties;
> (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*Deason*, 632 So. 2d at 1383.

"The work product doctrine is distinct from and broader than the attorney-client privilege, and it protects materials prepared by the attorney, whether or not disclosed to the client, as well as materials prepared by agents for the attorney." *Fojtasek v. NCL (Bahamas) Ltd.*, 262 F.R.D. 650, 653 (S.D. Fla. 2009) (citing *In re Grand Jury Proceedings,* 601 F.2d 162, 171 (5th Cir. 1979)). Moreover, "because the work product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality, it is not automatically waived by the disclosure to a third party." *In re Grand Jury Subpoena,* 220 F.3d 406, 409 (5th Cir. 2000). Yet, this still requires the party asserting protection under the

8

work product doctrine to demonstrate that the drafting entity anticipated litigation at the time the documents were drafted. *See CSX Transp., Inc. v. Admiral Ins. Co.,* 1995 WL 855421, at *2 (M.D. Fla. July 20, 1995). This means that materials drafted in the ordinary course of business are not protected under the work product doctrine.

In determining whether materials are protected, a court must determine when and why a contested document was created. *See, e.g. In re Sealed Case,* 146 F.3d 881, 884 (D.C. Cir. 1998) ("The 'testing question' for the work-product privilege . . . is 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'"). And similar to the attorney-client privilege, "the burden is on the party withholding discovery to show that the documents should be afforded work-product [protection]." *Fojtasek,* 262 F.R.D. at 654 (citing *United States v. Schaltenbrand,* 930 F.2d 1554, 1562 (11th Cir. 1991) (applying rule for attorney-client issue); *Essex Builders Group, Inc. v. Amerisure Insurance Company,* 2006 WL 1733857 at *2 (M.D. Fla. June 20, 2006) ("[T]he party asserting work product privilege has the burden of showing the applicability of the doctrine") (citing *Grand Jury Proceedings v. United States,* 156 F.3d 1038, 1042 (10th Cir. 1998)).

After full consideration of the arguments presented, we find that Toyota has presented good cause to seal the documents at Exhibit B. First, it is clear that the documents reflect advice from Toyota's lawyers because many of the documents

relate to the settlement value of cases, litigation strategies, and discovery obligations. Second, these documents have already been held to be privileged in other cases, notwithstanding the fact that Mr. Biller stole these documents. When Congress subpoenaed Mr. Biller and later published the documents, Toyota immediately requested that they be removed from the internet because of their privileged status. As such, we agree with the Ninth Circuit that "[i]n these circumstances . . . "TMS preserved its right to maintain the confidentiality" of the documents. *Biller*, 668 F.3d at 670.

Third, Plaintiff appears to suggest that the public should have access to these documents because it could prevent wrongful deaths and catastrophic life-injuries. We disagree. There is no basis in this case to set aside the attorney-client privilege or the work product doctrine. And based on an independent review of the documents, there is no exception that would justify their release to the public domain (i.e. the crime-fraud exception). Because Toyota has adequately demonstrated (1) that the communications are privileged, (2) that they contain confidential proprietary information, (3) that sealing them will not impair Plaintiff's claims, and (4) that good cause exists, Toyota's motion to seal is **GRANTED**.

## II. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Toyota's motion to seal [D.E. 8] is **GRANTED**.  The Clerk is directed to seal Exhibit B to Plaintiff's complaint.  [D.E. 1-2].

**DONE AND ORDERED** in Chambers at Miami, Florida, this 16th day of November, 2017.

>  /s/ *Edwin G. Torres*
> EDWIN G. TORRES
> United States Magistrate Judge